No. 19-70008

In The
# United States Court of Appeals for the Fifth Circuit

CHUONG DUONG TONG,
*Petitioner–Appellant,*

v.

BOBBY LUMPKIN, Director,
Texas Department of Criminal Justice,
Correctional Institutions Division,
*Respondent–Appellee.*

On Appeal from the United States District Court
for the Southern District of Texas
No. 4:10-CV-2355

## RESPONDENT–APPELLEE'S SUPPLEMENTAL RESPONSE

JOHN SCOTT
Provisional Attorney General
of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
For Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

ALI MUSTAPHA NASSER
Assistant Attorney General
*Counsel of Record*

P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 936-1400 Austin, Texas 78711
ali.nasser@oag.texas.gov

*Counsel for Respondent–Appellee*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

*Respondent–Appellee*
Bobby Lumpkin, Director
TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

*Counsel for Respondent–Appellee*
Ali Nasser, Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL OF TEXAS

*Petitioner–Appellant*
Chuong Duong Tong

*Counsel for Petitioner–Appellant*
Jonathan Landers
ATTORNEY AT LAW

s/ Ali Mustapha Nasser
ALI MUSTAPHA NASSER
Assistant Attorney General
*Counsel of Record*

*Counsel for Respondent–Appellee*

i

## STATEMENT REGARDING ORAL ARGUMENT

The parties' briefs adequately lay out the facts and legal arguments, and the decisional process would not be significantly aided by oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ......................................... i

STATEMENT REGARDING ORAL ARGUMENT ................................... ii

TABLE OF CONTENTS ..................................................................... iii

TABLE OF AUTHORITIES .................................................................. v

INTRODUCTION .............................................................................. 1

STATEMENT OF THE ISSUES ............................................................ 2

STATEMENT OF THE CASE ............................................................... 2

I.    Tong's First Round of Proceedings (2010–2019) ............................ 2

II.   Appeal and Remand Proceedings (2019–2023) ............................. 4

SUMMARY OF THE ARGUMENT ....................................................... 7

ARGUMENT ..................................................................................... 8

I.    Tong Fails to Show that the District Court Abused its
      Discretion by Denying his Motion to Stay and Abate
      Proceedings......................................................................... 8

      A.    Tong fails to show good cause for failing to exhaust his
            *Wiggins* claim. ........................................................... 9

            i.    Under Circuit precedent, the ineffectiveness of
                  state-habeas counsel does not establish cause for
                  failing to exhaust under *Rhines*.................................. 9

            ii.   Even assuming that state-habeas counsel's
                  ineffectiveness could show cause under *Rhines*,
                  Tong fails to make such a showing. ............................. 13

      B.    As Tong's *Wiggins* claim is guaranteed to be
            procedurally barred in state court, his request for a stay
            is plainly meritless. ................................................... 16

            i.    Under CCA precedent, a claim presented in a
                  subsequent application is procedurally barred if
                  initial-habeas counsel could have raised the claim
                  in the first application. ............................................ 17

ii.    Tong cannot show he has an adequate remedy in state court through his speculation that Texas law might change. ............................................................... 19

iii.   The district court correctly determined that Tong had no available state remedies under Texas law. ...... 23

C.    Tong has engaged in abusive litigation tactics. ................... 27

II.    This Court Cannot Create an Exception to Supreme Court Precedent by Finding a Constitutional Right to Effective Counsel in State-Court Collateral Proceedings............................ 29

CONCLUSION ..................................................................... 34

CERTIFICATE OF SERVICE.................................................. 35

CERTIFICATE OF COMPLIANCE........................................ 35

ELECTRONIC CASE FILING CERTIFICATIONS.............................. 36

# TABLE OF AUTHORITIES

## Cases

*Ayestas v. Davis*,
    138 S. Ct. 1080 (2018) ...................................................................5

*Ayestas v. Davis*,
    933 F.3d 384 (5th Cir. 2019) ...............................................5, 17, 36

*Bobby v. Van Hook*,
    558 U.S. 4 (2009) ...........................................................................17

*Brown v. McDaniel*,
    331 P.3d 867 (Nev. 2014) ..............................................................30

*Calderon v. Thompson*,
    523 U.S. 538 (1998) .......................................................................15

*Camacho v. Reubart*,
    No. 3:20-cv-00488-RCJ-CSD, 2022 WL 3969638 (D. Nev.
    Aug. 21, 2022)................................................................................32

*Coleman v. Thompson*,
    501 U.S. 722 (1991) .................................................. 12, 38, 39, 41

*Dale v. Williams*,
    No. 3:20-cv-00031-MMD-CLB, 2023 WL 3568166 (D. Nev.
    May 18, 2023) ................................................................................31

*Davila v. Davis*,
    582 U.S. 521 (2017) .........................................................24, 27, 41

*Ex parte Blue*,
    230 S.W.3d 151 (Tex. Crim. App. 2007)......................................22

*Ex parte Campbell*,
    226 S.W.3d 418 (Tex. Crim. App. 2007)......................................28

*Ex parte Graves*,
    70 S.W.3d 103 (Tex. Crim. App. 2002).........................................21

*Ex parte Medina*,
    No. WR-41,274-05, 2017 WL 690960 (Tex. Crim. App. Jan.
    25, 2017) ........................................................................................25

*Ex parte Preyor,*
    537 S.W.3d 1 (Tex. Crim. App. 2017)......................................25, 27

*Ex parte Ruiz,*
    543 S.W.3d 805 (Tex. Crim. App. 2016).........................................21

*Ex parte Tong,*
    No. WR-71,377-02, 2013 WL 2285455 (Tex. Crim. App. May
    22, 2013) ...................................................................................3, 28

*Finley v. Johnson,*
    243 F.3d 215 (5th Cir. 2001) .........................................................33

*Gochicoa v. Johnson,*
    238 F.3d 278 (5th Cir. 2000) .........................................................41

*Guevara-Pontifes v. Baker,*
    No. 320-cv-00652, 2022 WL 4448259 (D. Nev. Sept. 23, 2022).....31

*Guidry v. Lumpkin,*
    2 F.4th 472 (5th Cir. 2021).............................................................16

*Hall v. Thaler,*
    504 F. App'x 269 (5th Cir. 2012) ...................................................12

*Hughes v. Quarterman,*
    530 F.3d 336 (5th Cir. 2008) .........................................................20

*In re Cajun Elec. Power Coop., Inc.,*
    109 F.3d 248 (5th Cir. 1997) .........................................................41

*Irish v. Cain,*
    No. 15-480, 2023 WL 2564397 (W.D. La. Mar. 16, 2023).............30

*Jacobs v. Nat'l Drug Intel. Ctr.,*
    548 F.3d 375 (5th Cir. 2008) .........................................................13

*Kittelson v. Dretke,*
    426 F.3d 306 (5th Cir. 2005) .........................................................33

*Lave v. Dretke,*
    444 F.3d 333 (5th Cir. 2006) .........................................................10

*Leal Garcia v. Texas,*
    564 U.S. 940 (2011) ......................................................................24

*Martinez v. Ryan,*
    566 U.S. 1 (2012) ............................................................... passim

*Michael Williams v. Taylor*,
    529 U.S. 420 (2000) ....................................................... 18

*Moncada v. Perry*,
    No. 3:19-cv-00231-MMD-CLB, 2022 WL 3636467 (D. Nev.
    Aug. 23, 2022)........................................................ 29, 30

*Moody v. Lumpkin*,
    – F.4th –, 2023 WL 4038628 (5th Cir. 2023) ................................ 38

*Mullis v. Lumpkin*,
    – F.4th –, 2023 WL 4057540 (5th Cir. 2023) ................................ 18

*Murray v. Giarratano*,
    492 U.S. 1 (1989) ........................................................ 38

*Neville v. Dretke*,
    423 F.3d 474 (5th Cir. 2005) ................................................ 19, 32

*Nobles v. Johnson*,
    127 F.3d 409 (5th Cir. 1997) ........................................................ 33

*Ochoa-Salgado v. Garland*,
    5 F.4th 615 (5th Cir. 2021)........................................................ 26

*Pandeli v. Shinn*,
    No. CV-17-01657-PHX-JJT, 2022 WL 16855196 (D. Ariz.
    Nov. 10, 2022)........................................................ 31

*Pennsylvania v. Finley*,
    481 U.S. 511 (1987) ........................................................ 38

*Pritchett v. Gentry*,
    No. 2:L17-cv-01694-JAD-DJA, 2022 WL 4366996 (D. Nev.
    Sep. 21, 2022) ........................................................ 31

*Rhines v. Weber*,
    544 U.S. 269 (2005) ........................................................ passim

*Richardson v. Tex. Sec'y of State*,
    978 F.3d 220 (5th Cir. 2020) ........................................................ 26

*Roberts v. Thaler*,
    681 F.3d 597 (5th Cir. 2012) ........................................................ 26

*Rocha v. Thaler*,
    626 F.3d 825 (5th Cir. 2010) ........................................................ 23

*Sawyer v. Whitley,*
    505 U.S. 333 (1992) ...................................................................22

*Shanklin v. Raybon,*
    No. 6:20-cv-2020-LSC, 2023 WL 2356037 (N.D. Ala. Mar.
    2023) ........................................................................................31

*Shinn v. Martinez Ramirez,*
    142 S. Ct. 1718 (2022) ........................................................ passim

*Slater v. Davis,*
    717 F. App'x 432 (5th Cir. 2018) ...............................................32

*Strickland v. Washington,*
    466 U.S. 668 (1984) ...................................................................17

*Thomas v. Lumpkin,*
    995 F.3d 432 (5th Cir. 2021) ......................................................11

*Thompson v. Quarterman,*
    629 F.Supp.2d 665 (S.D. Tex. 2007) ..........................................35

*Tong v. Lumpkin,*
    825 F. App'x 181 (5th Cir. 2020) ...........................................6, 36

*Trevino v. Thaler,*
    569 U.S. 413 (2013) ...............................................................11, 12

*United States v. Traxler,*
    764 F.3d 486 (5th Cir. 2014) .................................................13, 38

*Wiggins v. Smith,*
    539 U.S. 510 (2003) .....................................................................1

*Williams v. Stephens,*
    No. H-13-0102, 2013 WL 6200204 (S.D. Tex. Nov. 26, 2013)........35

*Williams v. Thaler,*
    602 F.3d 291 (5th Cir. 2010) ......................................................11

## Statutes

28 U.S.C. § 2254 .......................................................................1, 6, 7

Tex. Code Crim. Proc. art. 11.071............................................16, 17, 22

## INTRODUCTION

This is an appeal from the denial of federal habeas relief. Petitioner–Appellant, Chuong Duong Tong, is a capitally-sentenced Texas state inmate. Over the last thirteen years, Tong has raised multiple versions of a procedurally defaulted ineffective-assistance-of-counsel (IATC) claim under *Wiggins v. Smith*, 539 U.S. 510 (2003), alleging that trial counsel were ineffective for failing to present more mitigating evidence at the punishment phase of his trial, and he has sought funding over that time to supplement the claim with new evidence. After many twists and turns through the federal habeas process, including a remand from this Court, Tong obtained funding to supplement that claim in 2020. The case was returned to this Court for clarification on how to proceed, and this Court remanded the case a second time for development of Tong's *Wiggins* claim.

But in May 2022, as Tong was preparing to amend his *Wiggins* claim to present the newly discovered evidence to the district court, the United States Supreme Court announced *Shinn v. Martinez Ramirez*, 142 S. Ct. 1718 (2022), which held that the new evidence was statutorily barred in federal court under 28 U.S.C. § 2254(e)(2). Tong then filed a

motion to stay proceedings so that he could present his *Wiggins* claim in state court. The district court correctly determined that Tong's request for a stay was plainly meritless because the *Wiggins* claim would be procedurally barred in state court, and it accordingly entered judgment terminating the remand proceeding. Pointing to the novelty of *Martinez Ramirez*, however, the district court granted a certificate of appealability (COA) on the issue. As the district court did not err, the judgment should be affirmed.

## STATEMENT OF THE ISSUES

1. Texas Court of Criminal Appeals' (CCA) precedent procedurally bars subsequent claims predicated on facts that former habeas counsel could have discovered through due diligence. Given that, did the district court err when it determined that the CCA would procedurally bar Tong's *Wiggins* claim?

2. The United States Supreme Court and this Court have repeatedly held that habeas petitioners are not constitutionally entitled to counsel during state-collateral proceedings. Can, or should, this Court hold that there is an exception to that rule?

## STATEMENT OF THE CASE

### I.  Tong's First Round of Proceedings (2010–2019)

Tong filed his first federal petition for habeas relief in July 2010, where he first raised a *Wiggins* claim. ROA.115. While the petition vaguely discussed potential mitigating evidence that trial counsel should

have discovered, Tong provided no evidentiary support for his claim. ROA.150–51. In his response, Respondent asserted that the claim was unexhausted, procedurally defaulted, and meritless. ROA.301–02. Tong amended his petition in September 2011, this time attaching only slightly more support: Articles on presenting mitigating evidence and a biographical summary of Tong's life created by trial counsel. ROA.477, ROA.1067–1120. Again, Respondent countered that the claim was unexhausted, procedurally defaulted, and meritless. ROA.1237–39. About a year later, the district court stayed proceedings so that Tong could exhaust his unexhausted claims. ROA.1461–62. Tong presented them in state court, and the CCA dismissed the claims under Texas's subsequent-writ bar. *Ex parte Tong*, No. WR-71,377-02, 2013 WL 2285455, at *1 (Tex. Crim. App. May 22, 2013).

Tong then returned to federal court, requesting funding for a mitigation expert and Vietnamese interpreter to investigate potential evidence related to his *Wiggins* claim, which the district court denied. ROA.1548–72; ROA.1626–29. He then filed a second amended petition in October 2014, in which he reargued his *Wiggins* claim. ROA.1783. And once again, Tong added new evidence: Affidavits from two of Tong's

cousins. ROA.1810–19; ROA.2518–25. On September 30, 2016, the district court denied the claim, finding that trial counsel's investigation into mitigating evidence was not deficient and that the evidence uncovered by Tong's federal counsel was "largely duplicative, or merely provides some additional detail to, evidence that was before the jury." ROA.2962–66. After an evidentiary hearing on other claims, the Court entered final judgment in March 2019, denying Tong habeas relief and dismissing his petition. ROA.11840–41 (sealed). The court granted Tong a COA on his voir-dire claim. *Id*.

## II.    Appeal and Remand Proceedings (2019–2023)

Tong filed two separate appellate briefs on October 4, 2019. Petitioner Tong's Appellate Brief and Application for Additional Certificate of Appealability, *Tong v. Davis*, No. 19-70008 (5th Cir. Oct. 4, 2019). In one brief, filed under seal, Tong sought COA on two suppression-of-evidence claims and his *Wiggins* claim. Application for Additional Certificate of Appealability, *Tong v. Davis*, No. 19-70008 (5th Cir. Oct. 4, 2019). In the other brief, filed in open court, Tong appealed the denial of his voir-dire claim, the denial of his voir-dire ineffective-assistance-of-appellate-counsel (IAAC) claim, and the denial of funding

to develop his *Wiggins* claim. Petitioner Tong's Appellate Brief, *Tong v. Davis*, No. 19-70008 (5th Cir. Oct. 4, 2019).

On August 27, 2020, this Court denied COA on the two prosecutorial misconduct claims, but it also vacated the district court's denial of funding for the *Wiggins* claim so that the district court could reconsider the funding decision in light of *Ayestas v. Davis*, 138 S. Ct. 1080 (2018). *Tong v. Lumpkin*, 825 F. App'x. 181, 186 (5th Cir. 2020). The Court accordingly stayed consideration of a COA on the *Wiggins* claim pending resolution of the funding issue. *Id.* The Court's opinion made no mention of the voir-dire claim or the associated voir-dire-IAAC claim. *Id.* So those claims remain pending before this Court, as does Tong's request for a COA on his *Wiggins* claim.[1]

On remand, the district court granted Tong funding to supplement his *Wiggins* claim and ordered the parties to confer and submit a scheduling order for the investigation and supplemental briefing of the claim. ROA.12071–76. Respondent moved for reconsideration, pointing

---

[1]     A dispute arose on appeal regarding whether the district court's grant of a COA on the voir-dire claim, ROA.11840–41 (sealed), extended to the associated voir-dire-IAAC claim. Appellee's Brief at 28–39, *Tong v. Lumpkin*, No. 19-70008 (5th Cir. Jan. 24, 2020); Petitioner Tong's Reply Brief at 10–12, *Tong v. Lumpkin*, No. 19-70008 (5th Cir. Mar. 2, 2020). On remand, the district court clarified that it *did not* grant a COA on the voir-dire-IAAC claim. ROA.12069–70.

out that the remand order *only* instructed the district court to reconsider the funding issue, nothing more. ROA.12077–80. The district court agreed and stayed district court proceedings pending further remand from this Court. ROA.12091–92.

Back in this Court, Tong moved for a further stay of appellate proceedings and a remand to develop his *Wiggins* claim. Appellant's Motion to Stay Further Proceedings, *Tong v. Lumpkin*, No. 19-70008 (5th Cir. Jul. 7, 2021). This Court granted the motion, vacated "the district court's previous order denying a COA on Tong's *Wiggins* claim[,]" and remanded "to the district court for development of that claim." ROA.12093–94.

In November 2021, the district court issued a scheduling order permitting Tong to file an amended version of his *Wiggins* claim. ROA.12112. In May 2022, before Tong had filed his amended *Wiggins* claim, the Supreme Court announced *Martinez Ramirez*, in which it held that evidence that could have been developed by state postconviction counsel in state court was foreclosed from consideration in federal court under § 2254(e)(2). 142 S. Ct. at 1728. Based on that holding, Respondent moved in August 2022 to terminate the remand proceedings and enter

final judgment. ROA.12251–62. Submission of the amended *Wiggins* claim was futile in light of *Martinez Ramirez*, Respondent argued, as the newly discovered mitigation evidence was barred by § 2254(e)(2). *Id.* A month later, Tong submitted his amended *Wiggins* claim—with new evidence attached—along with a motion to stay proceedings so that he could exhaust the claim in state court. ROA.12298–377; ROA.12825–38.

On March 4, 2023, the district court issued an order finding that Tong's *Wiggins* claim was foreclosed by *Martinez Ramirez* and denying Tong's motion to stay proceedings. ROA.13238–44. The Court reasoned that, because the CCA would procedurally bar the *Wiggins* claim as subsequent, Tong's request to go back to state court was plainly meritless, thus failing one of the prongs of *Rhines v. Weber*, 544 U.S. 269, 277 (2005). ROA.13240–42. The district court accordingly entered final judgment, terminated the remand proceeding, and granted Tong a COA. ROA.13245.

## SUMMARY OF THE ARGUMENT

Tong challenges the district court's denial of his motion to stay proceedings to exhaust his *Wiggins* claim in state court. But the district court did not err, as Tong fails all three prongs under *Rhines*: He fails to

show good cause for failing to exhaust his claim, he fails to show that his claim is plainly meritless, as it would be procedurally defaulted in state court, and he fails to show that he has not engaged in abusive dilatory tactics. In his second argument, Tong argues that this Court should hold that he was constitutionally entitled to effective counsel during state-collateral review. As such a holding is contrary to current Supreme Court and Circuit precedent, the Court must overrule this issue.

## ARGUMENT

### I.    Tong Fails to Show that the District Court Abused its Discretion by Denying his Motion to Stay and Abate Proceedings.

Tong appeals the district court's denial of his request for a *Rhines* stay. A "stay and abeyance should be available only in *limited* circumstances." *Rhines*, 544 U.S. at 277. (emphasis added). Namely, it should only be granted when an inmate can prove (1) good cause for the failure to exhaust, (2) that the request is not plainly meritless, and (3) that the request is not for purposes of delay. *Id.* at 277–78. A court should review such requests with caution because a stay and abeyance has the potential to "frustrate AEDPA's goal of finality by dragging out indefinitely . . . federal habeas review." *Id* at 277. The denial of a *Rhines*

stay is reviewed for an abuse of discretion. *Lave v. Dretke*, 444 F.3d 333, 336 (5th Cir. 2006).

## A. Tong fails to show good cause for failing to exhaust his *Wiggins* claim.

"Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Rhines*, 544 U.S. at 277. Tong contends that he showed good cause in district court through his allegation that state-habeas counsel were ineffective for failing to raise his *Wiggins* claim. Appellant's Br. at 35–37.

### i. Under Circuit precedent, the ineffectiveness of state-habeas counsel does not establish cause for failing to exhaust under *Rhines*.

Tong's good-cause argument runs afoul of this Circuit's precedent, which holds that the actions of state-habeas counsel do not constitute good cause under *Rhines*. *See Williams v. Thaler*, 602 F.3d 291, 309 (5th Cir. 2010) (ineffective assistance of state-habeas counsel due to a conflict of interest did not constitute good cause for purposes of *Rhines*), *overruled on other grounds by Thomas v. Lumpkin*, 995 F.3d 432, 440 (5th Cir. 2021). Tong suggests that the holdings in *Martinez v. Ryan*, 566 U.S. 1

(2012) and *Trevino v. Thaler*, 569 U.S. 413 (2013), might have altered that precedent. Appellant's Br. at 36–37. In *Martinez/Trevino* the Supreme Court held that state-habeas counsel's ineffectiveness could constitute cause so that a Texas petitioner could obtain federal merits review of a defaulted IATC claim. *Martinez*, 566 U.S. at 13; *Trevino*, 569 U.S. at 429. Tong suggests that, if state-habeas counsel's ineffectiveness is good cause for purposes of overcoming a default, it should also serve as good cause under *Rhines* for purposes of justifying a stay. Appellant's Br. at 36–37.

But even after *Martinez*, this Court stated in the *Rhines* context that "attorney ignorance or inadvertence is not cause because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error." *Hall v. Thaler*, 504 F. App'x 269, 284 (5th Cir. 2012) (quoting *Coleman v. Thompson*, 501 U.S. 722, 753 (1991)). Moreover, under this Court's rule of orderliness, this Court "may not overturn another panel's decision, absent an intervening change in the law, such as by statutory amendment, or the Supreme Court, or our en banc court." *United States v. Traxler*, 764 F.3d 486, 489 (5th Cir. 2014) (quoting

*Jacobs v. Nat'l Drug Intel. Ctr.,* 548 F.3d 375, 378 (5th Cir. 2008)). While Tong might argue that the inferential reasoning in *Martinez* should alter Circuit precedent, such an argument is precluded by the rule of orderliness. *Id.* ("Indeed, in *Jacobs*, we specifically rejected the idea that later Supreme Court and other decisions that *were not directly on point* could alter the binding nature of our prior precedent." (emphasis added) (citing *Jacobs* 548 F.3d at 378)).

Moreover, the equitable concerns underpinning *Martinez* do not apply to *Rhines*. The rule in *Martinez* was intended to avoid a situation in which *no court* would ever be able to review an IATC claim that was procedurally defaulted due to state-postconviction counsel's ineffectiveness. *See* 566 U.S. at 10–11 ("And if counsel's errors in an initial-review collateral proceeding do not establish cause to excuse the procedural default in a federal habeas proceeding, no court will review the prisoner's claims."). That problem is solved by the equitable exception to procedural default recognized in *Martinez*. It makes little equitable sense to delay proceedings so that a petitioner can exhaust a claim when he already has a pathway to merits review in federal court.

That is especially the case when considering the costs entailed by analogizing *Rhines* to *Martinez*. The Supreme Court premised *Martinez* in part on the theory that the holding "ought not to put a significant strain on state resources." *Id.* at 15. And that rationale itself was premised on the fact that states could simply challenge the *Martinez* argument in *federal court*:

> When faced with the question whether there is cause for an apparent default, a State may answer that the ineffective-assistance-of-trial-counsel claim is insubstantial, *i.e.,* it does not have any merit or that it is wholly without factual support, or that the attorney in the initial-review collateral proceeding did not perform below constitutional standards.

*Id.*

That logic hardly holds water if *Martinez* could justify a stay of proceedings as well. In such a situation, before rebutting the *Martinez* claim in federal court, the State would have to address the state-court litigation of the claim and then *go back* to address either the underlying claim or corresponding *Martinez* claim in federal court. And this duplicative litigation would also undermine AEDPA's purpose of reducing "delays in the execution of state sentences[.]" *Rhines*, 544 U.S. at 276–77; *see also Martinez Ramirez*, 142 S. Ct. at 1739 ("Serial relitigation of final convictions undermines the finality that 'is essential

to both the retributive and deterrent functions of criminal law.'" (quoting *Calderon v. Thompson*, 523 U.S. 538, 555 (1998))). Such delay and strain on state resources cannot be justified where the petitioner already has an avenue for relief in federal court.

### ii. Even assuming that state-habeas counsel's ineffectiveness could show cause under *Rhines*, Tong fails to make such a showing.

Tong also cannot show state-habeas counsel were ineffective. Reviewing the version of Tong's *Wiggins* claim before funding was granted, the district court already determined that trial counsel were not ineffective for failing to present mitigating evidence. ROA.2964–66. And that determination is not debatable as trial counsel did substantially investigate and present mitigation evidence at trial. *See* Response in Opposition to Application for Certificate of Appealability at 47–63, *Tong v. Lumpkin*, No. No. 19-70008 (5th Cir. Jan. 24, 2020). Thus, Tong cannot show that state-habeas counsel were ineffective. *See Guidry v. Lumpkin*, 2 F.4th 472, 489 (5th Cir. 2021) ("Guidry cannot show cause because his state habeas counsel was not ineffective for failing to raise a meritless IATC claim."). He also fails to make such a showing given that state-habeas counsel considered whether to raise a *Wiggins* claim in state court

but reasonably decided against it. Appellee's Brief at 56–58, *Tong v. Lumpkin*, No. 19-70008 (5th Cir. Jan. 24, 2020).[2]

Second, while Tong has added new evidence during federal proceedings, analysis of state-habeas counsel's ineffectiveness is confined to the state-court record, and thus omits the new evidence. "[I]f [28 U.S.C. § 2254(e)(2)] applies, and the prisoner cannot satisfy its 'stringent requirements,' a federal court may not hold an evidentiary hearing—*or otherwise consider new evidence*—to assess cause and prejudice under *Martinez*." *Martinez Ramirez*, 142 S. Ct. at 1739 (emphasis added) (quoting *Michael Williams v. Taylor*, 529 U.S. 420, 433 (2000)); *but see Mullis v. Lumpkin*, – F.4th –, 2023 WL 4057540, at *2–3 (5th Cir. 2023)

---

[2]    In his supplemental brief, Tong alleges that state-habeas counsel didn't conduct a mitigation investigation in accordance with the State Bar of Texas's postconviction guidelines. Appellant's Br. at 37–38. But those guidelines didn't exist when Tong's state habeas application was filed in 2000. *Id*. at 38 (accepting guidelines' publication in 2006). As such, they are not the yardstick by which state-habeas counsel's performance is measured. *See Bobby v. Van Hook*, 558 U.S. 4, 8 (2009) (per curiam) ("Judging counsel's conduct in the 1980's on the basis of these 2003 Guidelines—without even pausing to consider whether they reflected the prevailing professional practice at the time of the trial—was error."). Rather, "[s]crutiny of mitigation investigations did not take shape until well after [Tong's] state-habeas application was filed in [2000]." *Ayestas v. Davis*, 933 F.3d 384, 389 (5th Cir. 2019). And in any event, such guidelines "are 'only guides' to what reasonableness means, not its definition." *Van Hook*, 558 U.S. at 8 (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).

(holding that *Martinez Ramirez* does not preclude evidentiary hearings on cause under *Martinez*).[3] As Tong argues that his state-habeas counsel were ineffective, their failure to present this new evidence in state court is imputed to him under § 2254(e)(2). *Id.* at 1735 ("[U]nder § 2254(e)(2) a prisoner is 'at fault' even when state postconviction counsel is negligent."). And because § 2254(e)(2) applies, this Court cannot consider Tong's newly presented mitigation evidence for *any purpose*—including the purpose of considering cause.

Reviewing state-habeas counsel's performance in the proper historical context and against the properly considered record, Tong fails to show that they were ineffective.

---

[3]    While *Mullis* permitted consideration of new evidence when adjudicating cause under *Martinez*, the facts in that case are different from the facts here. Mullis challenged state-habeas counsel's effectiveness for not adequately challenging his competency to waive all of his state-habeas proceedings. *Mullis*, 2023 WL 4057540, at *1. In that situation, the new evidence related to cause was truly distinct from the facts underlying any claim for relief. In reasoning that Supreme Court precedent did not foreclose review of the new evidence for the sole purpose of reviewing cause, this Court noted "the evidence Mullis seeks to admit undeniably pertains to his *Martinez* claim and would be *used in that context alone.*" *Id.* at *3 (emphasis added). The same cannot be said for Tong's newly presented mitigation evidence, which would go towards both the *Martinez* "claim" and the underlying *Wiggins* claim as well. Thus, *Mullis* should not apply in a situation such as this one—where it is clear that the same evidence presented for showing cause is also offered in support of the merits of the underlying claim.

**B.    As Tong's *Wiggins* claim is guaranteed to be procedurally barred in state court, his request for a stay is plainly meritless.**

A request to exhaust a claim under *Rhines* is plainly meritless if the claim would be procedurally barred upon return to state court. *Neville v. Dretke*, 423 F.3d 474, 480 (5th Cir. 2005). Texas's abuse-of-the-writ statute bars subsequent habeas applications except in limited circumstances. Tex. Code Crim. Proc. art. 11.071 § 5. And for decades the Fifth Circuit has held that the CCA strictly and regularly applies this subsequent-writ bar. *See, e.g., Hughes v. Quarterman*, 530 F.3d 336, 342 (5th Cir. 2008).

A state-habeas applicant may hurdle the subsequent-writ bar if he can prove that his claim fits within one of three exceptions:

> (1) the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application;
>
> (2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt; or
>
> (3) by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues

> that were submitted to the jury in the applicant's trial under Article 37.071, 37.0711, or 37.072.

Tex. Code Crim. Proc. art. 11.071 § 5(a).

Tong argues that he might be able to pass through this bar if the CCA creates a *Martinez*-like exception to the subsequent-writ bar, allowing applicants to overcome the bar based on prior habeas counsel's ineffectiveness. Appellant's Br. at 39. This argument is contrary to CCA precedent, and the district court correctly rejected it.

### i. Under CCA precedent, a claim presented in a subsequent application is procedurally barred if initial-habeas counsel could have raised the claim in the first application.

The CCA has rejected the argument that a claim may pass through the subsequent-writ bar because initial-habeas counsel were ineffective for not presenting it in an initial application. *Ex parte Graves*, 70 S.W.3d 103, 117 (Tex. Crim. App. 2002). Recognizing he is stuck, Tong suggests that *Graves* might not even apply to his case. Appellant's Br. at 40. But the CCA has said otherwise: "If an applicant's habeas counsel fails to raise a potentially meritorious IA[T]C claim in an initial writ application, under our holding in *Graves*, that claim cannot be revived in a subsequent writ application by asserting ineffective assistance of habeas

counsel." *Ex parte Ruiz*, 543 S.W.3d 805, 825 (Tex. Crim. App. 2016). Trusting the CCA to correctly decipher its own precedent, *Graves* clearly forecloses the very argument Tong would make in state court.

Tong also suggests that the exception under § 5(a)(3) might serve as a gateway to present his *Wiggins* claim in a subsequent application. Appellant's Br. at 42–43. That exception excuses a procedural bar if a petitioner "can show by clear and convincing evidence that, but for a violation of the United States Constitution, no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial under Article 37.071[.]" *Ex parte Blue*, 230 S.W.3d 151, 153 (Tex. Crim. App. 2007).

But this Court determined that § 5(a)(3) was modeled after the Supreme Court's doctrine of actual innocence of the death penalty under *Sawyer v. Whitley,* 505 U.S. 333 (1992), and "[e]vidence that might have persuaded the jury to decline to impose the death penalty is irrelevant under *Sawyer.*" *Rocha v. Thaler*, 626 F.3d 825–26 (5th Cir. 2010). Thus, it is irrelevant under § 5(a)(3) as well. *Id*. at 825 ("The quality of the mitigation evidence the petitioner would have introduced at sentencing has no bearing on his claim of actual innocence.").

Simply put, under Texas law, there is no procedural avenue under which Tong can obtain a merits review of his *Wiggins* claim in state court.

> ### ii.   Tong cannot show he has an adequate remedy in state court through his speculation that Texas law might change.

The district court correctly noted that the CCA "has never held that ineffective assistance of habeas counsel constitutes cause" and declined to "grant a stay based on Tong's hypothetical hope that the law will change." ROA.13241. Tong now reiterates the same argument he made in district court, claiming that the CCA *might* review his *Wiggins* claim because it *might* adopt an exception to the subsequent-writ bar based on initial-habeas counsel's ineffectiveness. Appellant's Br. at 39–40. Tong's argument—a hodgepodge of various CCA concurrences and dissents—is that "at least six [judges] have . . . *suggested* that the [CCA] should revisit its subsequent application jurisprudence in light of *Trevino.*" *Id.* at 39 (emphasis added). So many layers of speculation do not provide sufficient basis for delaying this proceeding further.

Tong's hope that the law might change to his benefit is, by definition, not the law. *See Leal Garcia v. Texas*, 564 U.S. 940, 941 (2011) ("Our task is to rule on what the law is, not what it might eventually

be."). Nor are the various concurrences and dissents he cites. And even if this Court were to indulge Tong's judge-counting exercise, only two of the six judges he references are still on the court. *Compare* Appellant's Br. at 40 n.17, *with About the Court: Judges*, Court of Criminal Appeals of Texas, https://www.txcourts.gov/cca/about-the-court/judges/ (last visited June 21, 2023). And one of the two remaining judges in that list showed skepticism of Tong's argument in light of the Supreme Court's reaffirmation in *Davila v. Davis*, 582 U.S. 521 (2017), that there is no constitutional right to state-postconviction counsel. *Compare* Appellant's Br. at 40 n.17, *with Ex parte Preyor*, 537 S.W.3d 1, 2 (Tex. Crim. App. 2017) (Newell, J., concurring) ("The [Supreme] Court may, at some future date, constitutionalize the holdings of *Martinez* and *Trevino* and proclaim that the Sixth Amendment requires the appointment of counsel in a post-conviction habeas proceeding . . . But it is up to the United States Supreme Court to overrule its precedent, not this Court."). Upon closer look, Tong's judge-counting argument is just a mirage.

Perhaps realizing the futility of this argument, Tong points to a four-judge concurrence where it was assumed arguendo that *Martinez* and *Trevino* might provide an escape valve to Texas's abuse-of-the-writ

bar. Appellant's Br. at 40 (citing *Ex parte Medina*, No. WR-41,274-05, 2017 WL 690960, at \*9 (Tex. Crim. App. Jan. 25, 2017)). But that decision is even less favorable to Tong, as the concurring judges do not even take a position on *Martinez/Trevino*, but simply assume its application to reject the underlying merits. Such an assumption means nothing. *See Ochoa-Salgado v. Garland*, 5 F.4th 615, 619 (5th Cir. 2021) ("[A] panel's assumption 'is not binding if the adverse party did not challenge and we did not consider' that issue." (quoting *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 229 n.15 (5th Cir. 2020))). Especially when courts may, at their discretion, dispose of cases on the merits without considering applicable procedural bars. *See Roberts v. Thaler*, 681 F.3d 597, 605 (5th Cir. 2012) ("While our normal procedure is to consider issues of procedural default first, we may nonetheless opt to examine the merits first[.]"). That the CCA exercised this discretion does not mean they believed in the correctness of the procedural default excuse. In short, concurrences and dissents and assumptions do not establish the availability of a state remedy.

Moreover, five months after *Medina*, the Supreme Court issued *Davila*, 582 U.S. at 521 (issued June 26, 2017) and reaffirmed that

*Martinez* did not create a constitutional right to effective counsel on state-collateral review. *Id*. at 528–29. One month later, three CCA judges—including one that joined the *Medina* concurrence—issued a concurring opinion noting that the Supreme Court in *Davila* reaffirmed that *Martinez/Trevino* "is a federal equitable exception not a constitutional mandate applied to the states." *Ex parte Preyor*, 537 S.W.3d at 2 (Newell, J., concurring) (joined by Judge Hervey and Judge Richardson). It is therefore unsurprising that, in the decade since *Martinez*/*Trevino*, the CCA hasn't overruled *Graves*.

The facts here also place the obstacles to state-court merits review beyond doubt. Tong raised a *Wiggins* claim in a subsequent application when he returned to state court in 2012. ROA.2962–63. The CCA found it abusive without reviewing the merits. *Ex parte Tong*, 2013 WL 2285455, at *1. This is because Tong could have raised the claim in his initial application. *See* Tex. Code Crim. Proc. art. 11.071 § 5(a)(1). If his *Wiggins* claim was brought in a *second* subsequent application, the standard is even higher to obtain merits review—Tong would have to prove that the claim wasn't factually and legally available for *both* his initial application *and* his 2012 application. *See Ex parte Campbell*, 226

S.W.3d 418, 421 (Tex. Crim. App. 2007) (interpreting the abuse-of-the-writ bar to require unavailability "as to all . . . previous applications").

This short-circuits Tong's argument that the CCA might apply a *Martinez* exception to Texas's subsequent-writ bar. *Martinez* only concerns the effectiveness of state-postconviction counsel in "*initial-review collateral proceedings*[.]" 566 U.S. at 9 (emphasis added). Thus, Tong would not even be able to avail himself of a CCA-crafted *Martinez* exception to Texas's subsequent-writ bar because such an exception would not apply to his failure to present the claim in his *subsequent* application.

### iii.   The district court correctly determined that Tong had no available state remedies under Texas law.

Tong argues that "the state court [should] be allowed the first opportunity to consider the application of their own procedural rules[.]" Appellant's Br. at 33. He cites to other jurisdictions in which district courts have stayed cases post-*Martinez Ramirez* despite clear state law indicating that the claims would be procedurally barred upon return to state court. *Id*. at 41–44.

First, Tong cites to *Moncada v. Perry*, No. 3:19-cv-00231-MMD-CLB, 2022 WL 3636467 (D. Nev. Aug. 23, 2022), as an example of a

*Rhines* stay that was granted despite the fact that the petitioner "would face several procedural bars if he returned to state court to exhaust his claims." Appellant's Br. at 41. But the Nevada district court in that case recognized the futility of permitting state presentation of a claim under the theory of state-habeas counsel's ineffectiveness in light of currently existing Nevada law. *Moncada*, 2022 WL 3636467, at *4 n.4 ("The Nevada Supreme Court has expressly declined to follow the *Martinez* exception to excuse state procedural bars." (citing *Brown v. McDaniel*, 331 P.3d 867, 871–75 (Nev. 2014))). Instead, the court granted the stay finding that one of Moncada's claims might meet an exception to the procedural bar under the theory that the State suppressed evidence. *Id.* at *4. No such suppression is at play here. What Tong calls a "similar circumstance," Appellant's Br. at 41, is hardly that.

Tong also cites to other district court cases in which those courts granted a *Rhines* stay despite state-court precedent indicating that the claims would be procedurally barred. Appellant's Br. at 42 (citing *Irish v. Cain*, No. 15-480, 2023 WL 2564397 (W.D. La. Mar. 16, 2023)), 44 (citing *Guevara-Pontifes v. Baker*, No. 320-cv-00652, 2022 WL 4448259 (D. Nev.

Sept. 23, 2022) and *Pandeli v. Shinn*, No. CV-17-01657-PHX-JJT, 2022 WL 16855196 (D. Ariz. Nov. 10, 2022)).

But these cases are neither binding, nor persuasive.[4] They don't refute "the district court's role to examine state law to determine whether [Tong] met the requirements for a stay" by showing that "he has remedies under state law." *Slater v. Davis*, 717 F. App'x. 432, 439 (5th Cir. 2018); *see also Neville*, 423 F.3d at 480 (finding request for a stay plainly meritless based on a determination that Neville "is now procedurally barred from raising those claims in state court"). Instead, they serve as troubling examples of the pointless delay *Rhines* warned against. *Rhines*, 544 U.S. at 277 (cautioning that a "stay and abeyance should be available only in *limited* circumstances" and that frequently employed stays threaten delay and finality). Indeed, to accept Tong's argument that the state courts should *always* get the first chance to apply their

---

[4]     Even when faced with the suggestion that a petitioner could argue for the state court to change its procedural-default law in light of *Martinez Ramirez*, several other district courts have continued to find the request plainly meritless based on *current* state law. *See Dale v. Williams*, No. 3:20-cv-00031-MMD-CLB, 2023 WL 3568166, at *3–4 (D. Nev. May 18, 2023); *Shanklin v. Raybon*, No. 6:20-cv-2020-LSC, 2023 WL 2356037, at *4 (N.D. Ala. Mar. 2023); *Pritchett v. Gentry*, No. 2:L17-cv-01694-JAD-DJA, 2022 WL 4366996, at *4 (D. Nev. Sept. 21, 2022); *Camacho v. Reubart*, No. 3:20-cv-00488-RCJ-CSD, 2022 WL 3969638, at *5 (D. Nev. Aug. 21, 2022).

procedural bars—no matter how obvious it is that the claim would be procedurally barred under state law—would mean a petitioner is entitled to a stay in every case. That's a far cry from "limited circumstances."

Not only that, but such an argument also conflicts with this Circuit's case law on exhaustion and procedural default. "[I]f [a] prisoner fails to exhaust available state remedies, and the state court to which the prisoner would have to present his claims in order to exhaust them would find the claims procedurally barred, the prisoner has defaulted those claims." *Kittelson v. Dretke*, 426 F.3d 306, 315 (5th Cir. 2005) (citing *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) and *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001)). Sending unexhausted claims back to state court in *every instance* would be contrary to this Court's holding that such claims are already procedurally defaulted in federal court if the state court "*would find* the claims procedurally defaulted." Tong's argument is simply incompatible with Circuit precedent.

The district court thus correctly determined that the law and facts are overwhelmingly against Tong receiving merits review in state court. Far from being error, the district court's application of Texas law to the *Rhines* framework was correct on all points.

### C. Tong has engaged in abusive litigation tactics.

"[I]f a petitioner engages in abusive litigation tactics or intentional delay, the district court should not grant a stay at all." *Rhines*, 544 U.S. at 278. It is no secret that "capital petitioners might deliberately engage in dilatory tactics to prolong their incarceration and avoid execution of the sentence of death." *Id.* at 277–78.

Tong has done exactly that. His federal proceedings have been pending for roughly thirteen years. ROA.37 (first petition filed in 2010). Tong first added new evidence to his *Wiggins* claim in his third petition, ROA.2518–25, and Respondent argued it was unexhausted, ROA.2675–76. Yet, Tong never asked to stay proceedings to exhaust the claim. Instead, he waited eight years to request a stay. Such delay constitutes an abusive litigation tactic.[5] *See Thompson v. Quarterman*, 629 F.Supp.2d 665, 693 (S.D. Tex. 2007) (denying stay motion filed several months after petition); *Williams v. Stephens*, No. H-13-0102, 2013 WL

---

[5]    This also renders Tong's current appeal to comity and federalism, Appellant's Br. at 33, quite self-serving. Before *Martinez Ramirez*, Tong was apparently content to bypass state-court review of his new *Wiggins* claim. It is only now that *Martinez Ramirez* forecloses federal review of his new evidence that he suddenly seems to care about those principles.

6200204, at *7 (S.D. Tex. Nov. 26, 2013) (denying stay motion filed eight months after petition).

Moreover, the delays incurred by the two remands in this case could have been avoided had Tong acted with diligence in requesting reconsideration of the funding issue in the district court instead of waiting to raise the issue on appeal. Tong argues that he has not engaged in delay because he "promptly requested funding for a mitigation expert, and renewed this request at each available opportunity anticipating the eventual[] decision in *Ayestas* which resulted" in a remand of proceedings. Appellant's Br. at 43. That assertion all but confirms that Tong was dilatory, given that *Ayestas* came out roughly *one year* before the district court entered judgment dismissing Tong's petition, *compare Ayestas*, 138 S. Ct. at 1080 (dated March 21, 2018), *with* ROA.11840–41 (sealed) (final judgment dated March 22, 2019), and that Tong never moved for reconsideration of the denial of funding. If anything, the fact that *Ayestas* was on Tong's radar all along only makes his failure to bring it to the district court's attention all the more egregious. Because of this delay, it took nearly two years to resolve the funding issue. ROA.11840–

41 (sealed) (final judgment entered March 22, 2019); ROA.12071–76 (funding granted December 17, 2020).

Tong also failed to ensure that he had a proper remand from this Court, necessitating a second remand. As this Court initially vacated only the denial of funding, *Tong*, 825 F. App'x. at 186, the district court sent the case back to this Court awaiting a potential second remand before allowing Tong to develop his *Wiggins* claim with the new funding, ROA.12091–92. This caused another nine months of delay in an already delayed case. ROA.12071–76 (funding granted December 17, 2020); ROA.12093–94 (second remand ordered on September 28, 2021). The record easily supports delay, which supports the district court's ruling.

For these reasons, the district court did not abuse its discretion when it denied Tong's motion to stay proceedings.

## II. This Court Cannot Create an Exception to Supreme Court Precedent by Finding a Constitutional Right to Effective Counsel in State-Court Collateral Proceedings.

In his final argument, Tong asks this Court to "hold that he was entitled to effective assistance of counsel during his initial-review collateral proceedings which presented the only meaningful opportunity to raise his substantial ineffective assistance of counsel claim, and to hold

that the district court erred in ruling otherwise." Appellant's Br. at 52. In terminating remand proceedings, the district court concluded that Tong's suggestion of such a right "is simply not the current state of the law[.]" ROA.13242. Tong cobbles together the rationales of various precedents, asking this Court to hold that the district court was wrong. *See generally id.* at 48–52.

But this Court, once again, decided this issue against Tong just a week ago. *Moody v. Lumpkin*, – F.4th –, 2023 WL 4038628, at *6 (5th Cir. 2023) ("We agree with the State that *Martinez* and *Trevino* had no effect on the long-established rule that there is no constitutional right to counsel in postconviction proceedings."). *Moody* confirms what was already apparent—that the district court's assessment of the law was correct. With no intervening decisions, the rule of orderliness compels affirmance. *See Traxler*, 764 F.3d at 489.

This reiterative holding was hardly surprising. The Supreme Court has held, time and time again, that there is no constitutional right to effective counsel on state-collateral review. *See, e.g., Coleman*, 50 U.S. at 752 ("There is no constitutional right to an attorney in state-postconviction proceedings." (citing *Pennsylvania v. Finley*, 481 U.S. 511

(1987) and *Murray v. Giarratano*, 492 U.S. 1 (1989))). Tong nevertheless tries to seize on a piece of dicta in *Coleman*; namely, that there might exist some "exception to the rule of *Finley* and *Giarratano* in those cases where state collateral review is the first place a prisoner can present a challenge to his conviction." *Id.* at 755. In *Coleman*, the trial court reviewed Coleman's claims on collateral review, and it was only the *appeal* of those claims that was defaulted due to attorney error. *Id.* Because Coleman was able to present a "challenge to his conviction" on state collateral review, and because "one court ha[d] addressed Coleman's claims: the state habeas trial court[,]" the Court declined to review whether such an exception to the general rule in *Finley* existed. *Id.*

Twenty years later, the Supreme Court addressed this proposed exception again in *Martinez*, 566 U.S. at 8. Unlike *Coleman*, *Martinez* addressed a situation in which state-postconviction counsel's failure to present an IATC claim in a state-collateral proceeding deprived the prisoner of review of his claim in any state court. *Id.* at 15. In that case, the Supreme Court adopted an exception to *Coleman* that applies when IATC claims could only be brought on collateral review—thus making

collateral proceedings the first time a prisoner can present a challenge to his conviction predicated on trial counsel's ineffectiveness. *Id*. at 13–15. In that situation, if state-postconviction counsel is ineffective for failing to raise a substantial IATC in state court, the ineffectiveness can serve as cause to any default under *Coleman*. *Id*. at 17. But the Supreme Court declined to hold "that exception exists as a constitutional matter." *Id*. at 10. Instead, the Court determined the exception existed as an *equitable* qualification of *Coleman*. *Id*. at 13–14, 16.

Since then, the Supreme Court has only doubled down on its holding that there is no constitutional right to effective counsel during state-collateral proceedings. It reaffirmed this rule in *Davila*, holding that state-postconviction counsel's failure to raise an ineffective-assistance-of-appellate-counsel claim did not provide cause because *Martinez* only served as cause to present defaulted IATC claims in federal court. 582 U.S. at 524–25. And it reaffirmed it again in *Martinez Ramirez*:

> [I]n *Coleman*, we "reiterate[d] that counsel's ineffectiveness will constitute cause only if it is an independent constitutional violation," and surmised that a hypothetical constitutional right to initial-review postconviction counsel could give rise to a corresponding claim for cause. *Since then, however, we have*

> *repeatedly reaffirmed that there is no constitutional right to counsel in state postconviction proceedings.*

142 S. Ct. at 1737 (emphasis added) (quoting *Coleman,* 501 U.S. at 755).[6]

The Court reasoned that, because the prisoners were not entitled to constitutionally effective counsel during state-collateral proceedings, counsel's failure to develop the state-court record was attributable to the prisoners under § 2254(e)(2), thus barring their ability to present evidence in federal court absent extraordinary circumstances. *Id.* at 1735.

As both the Supreme Court and this Circuit have conclusively decided this issue against Tong, this Court must reject his argument as well.

---

[6]     Tong suggests that this statement is dictum. Appellant's Br. at 50. It is not. "A statement should be considered *dictum* when it 'could have been deleted without seriously impairing the analytical foundations of the holding-[and], being peripheral, may not have received the full and careful consideration of the court that uttered it.'" *Gochicoa v. Johnson*, 238 F.3d 278, 286 n.11 (5th Cir. 2000) (quoting *In re Cajun Elec. Power Coop., Inc.*, 109 F.3d 248, 256 (5th Cir. 1997)). Removing the Supreme Court's reaffirmance that there is no constitutional right to state-postconviction counsel would obviously have impaired its analysis in determining that a prisoner is at fault under § 2254(e)(2) for his state-postconviction attorney's failure to develop the state-court record. If such a right existed, state-postconviction counsel's ineffectiveness in failing to develop the record would be imputed to the State, not the petitioner. *See Martinez Ramirez*, 142 S. Ct. at 1733.

## CONCLUSION

For these reasons, the lower court's denial of Tong's request for a stay and its order terminating remand proceedings were not error. Therefore, his appeal of these issues should be overruled and the judgment of the district court should be affirmed (and the Court should deny COAs on Tong's *Wiggins* and voir-dire-IAAC claims, and affirm the denial of relief on Tong's voir-dire claim).

Respectfully submitted,

JOHN SCOTT
Provisional Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
For Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

s/ Ali Mustapha Nasser
ALI MUSTAPHA NASSER
Assistant Attorney General
State Bar No. 24098169
   *Counsel of Record*

Post Office Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1400
ali.nasser@oag.texas.gov

*Attorneys for Respondent–Appellee*

## CERTIFICATE OF SERVICE

I do hereby certify that on June 22, 2023, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" (NEF) to the following attorney of record, who consented in writing to accept the NEF as service of this document by electronic means:

Jonathan Landers
ATTORNEY AT LAW
917 Franklin Street, Suite 300
Houston, Texas 77002
jlanders.law@gmail.com

s/ Ali Mustapha Nasser
ALI MUSTAPHA NASSER
Assistant Attorney General

## CERTIFICATE OF COMPLIANCE

This brief complies with Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure. It contains 7,162 words, Microsoft Word for Office 365, Century Schoolbook, 14 points.

s/ Ali Mustapha Nasser
ALI MUSTAPHA NASSER
Assistant Attorney General

**ELECTRONIC CASE FILING CERTIFICATIONS**

I do hereby certify that: (1) all required privacy redactions have been made; (2) this electronic submission is an exact copy of the paper document; and (3) this document has been scanned using the most recent version of a commercial virus scanning program and is free of viruses.

s/ Ali Mustapha Nasser
ALI MUSTAPHA NASSER
Assistant Attorney General